EDWIN J. OHNMACHT, APPELLANT, V. PETER KIEWIT SONS CO., APPELLEE.

135 N. W. 2d 237

Filed May 14, 1965. No. 35962.

Ross & O'Connor, for appellant.

Stoehr, Rickerson, Sodoro & Caporale, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is a workmen's compensation case. One judge of the Nebraska Workmen's Compensation Court and later that court sitting en banc dismissed the petition. On appeal to the district court, the dismissal was affirmed. The plaintiff has appealed.

The basic issue is whether or not the plaintiff's claim is barred by the statute of limitations.

The plaintiff, while employed by the defendant as a carpenter in Omaha, Nebraska, tripped and sprained his ankle on July 15, 1960. He continued to work the rest of the day. He thereafter reported to Dr. Leahy, a physician employed by the defendant's compensation carrier. Dr. Leahy examined the plaintiff, took X-rays, and reported that he sustained a sprain. Dr. Leahy gave the plaintiff a prescription for pain, reported to the compensation carrier that the plaintiff was able to perform regular work, and that the accident did not result in any permanent injury. The plaintiff was also seen by Dr. Fellman, his own family physician, on July 29 and August 6, 1960, whose findings were the same as Dr. Leahy's. These medical expenses were all paid by the workmen's compensation carrier of the defendant. Plaintiff continued in the employment of the defendant through October 1960, and thereafter was employed by a number of other contractors. He testified that at no time

did he lose any compensable time because of his injury until May 1963. There was testimony that approximately 2 weeks after the occurrence in 1960 he was transferred by the defendant to another job since he had difficulty on rough surfaces. On his other jobs thereafter his foreman was aware of his problem and made it easier on him. The plaintiff had difficulty with his ankle from July 15, 1960, had pain more or less regularly from that date, and had restricted movement in the ankle from the date of the accident. In the early part of the week, pain did not normally bother him. During the middle of the week, the pain would start again and normally cleared up on weekends. The pain got worse when he worked on uneven surfaces or plowed ground. The plaintiff took it a bit easier in doing his work as a carpenter after July 1960, but always did his work. There were one or two occasions between July and December 1961, when the plaintiff left work early because of the pain. Since the accident, he limped when working. The plaintiff always attributed his pain and difficulties with his ankle to the accident of July 1960. In May 1963, the plaintiff went to Dr. Burney, an orthopedic specialist in Omaha. He did not consult with any other physician between August 1960 and May 1963, a period of 33 months. Upon examination, Dr. Burney found some muscle atrophy in the left ankle; that it was swollen in comparison to the right ankle; that there was a mild elevation of the arch of the foot; and that there was about 10 degrees of restricted ankle motion. This was lateral movement and the ability of twisting the foot in and out. X-ray examination disclosed bony masses which were abnormal. The bony formations were from hemorrhaging into torn ligaments secondary to the sprain or tearing of the ligaments. All sprains involve hemorrhaging, and the bony masses are one form of complication of a sprain. There is no medical testimony as to the progressiveness, if any, of the bony masses after 6 months following the accident. Dr. Bur-

ney testified that such bony formations are not very common in a sprain and it is not very likely that one would anticipate the happening. He also testified that it would take 6 months for the bony masses to show up as hazy shadows in an X-ray, and that if plaintiff's symptoms continued for 6 months after the accident, you would suspect complications and look for this type of thing. He also testified that if a joint is painful, it will have restricted motion which may be due to muscles or to bony blocking, and that he did not know which until he took the X-rays. He also testified that the plaintiff was unusually tolerant of pain and that the ankle condition, in his opinion, was the result of the accident in July 1960. Dr. Burney hospitalized the plaintiff and performed orthopedic surgery in an effort to remove the bony masses and thus relieve the pain and give the ankle better mobility. The results were not entirely satisfactory and, in the opinion of Dr. Burney, the plaintiff has a 30 percent permanent disability of the left foot.

Section 48-137, R. R. S. 1943, provides in part: "In case of personal injury, all claims for compensation shall be forever barred unless, within one year after the accident, * * * one of the parties shall have filed a petition as provided in section 48-173."

The plaintiff alleged that the injury in this case was latent and progressive. The rule is well established in this court that the statutory limitation does not become applicable and compensation will not be denied if the injury was latent and did not result in a compensable disability until after the time for commencing action, but it does become applicable after the expiration of 1 year from the time the employee has knowledge that the accident has caused a compensable disability. Webb v. Consumers Cooperative Assn., 171 Neb. 758, 107 N. W. 2d 737; Seymour v. Journal-Star Printing Co., 174 Neb. 150, 116 N. W. 2d 297. While it may not have been specifically so held, our cases are clear that the burden

of proving that an injury is latent and progressive so as to toll the statute of limitations is upon the plaintiff. See, Bame v. Lipsett, Inc., 172 Neb. 623, 111 N. W. 2d 380; Rahfeldt v. Swanson, 155 Neb. 482, 52 N. W. 2d 261.

The plaintiff filed his original petition in the workmen's compensation court July 31, 1963. The accident occurred July 15, 1960. It is the plaintiff's position that the only disability of which he had knowledge prior to May 1963, was pain, that pain alone is not compensable, and that, therefore, he was not chargeable with knowledge of a compensable disability until he knew that the bony masses had formed around his ankle joint. The evidence in this case establishes more than mere pain insofar as disability is concerned. The evidence is that from the date of the accident, the plaintiff limped when he worked, had restriction of motion in his ankle, and could not do his work as a carpenter as he could before. The plaintiff admitted that on at least one or two occasions between July and December 1961, more than 1 year after the accident, he left work early because of the pain in his ankle. The plaintiff's doctor testified that a sprain ordinarily lasts about 6 weeks. He also testified that after 6 months, the bony masses which resulted from the sprain would show up as hazy shadows in an X-ray. He also testified that if the plaintiff's symptoms continued for 6 months following the accident, you would look for complications such as this. Even if it might be conceded that the injury was originally latent and progressive, it can fairly be inferred from the evidence that it was reasonably discoverable after 6 months following the accident. It is clear that the plaintiff always knew his difficulties with his ankle stemmed from the accident of July 1960. All of the symptoms of his disability were evident from that time on. Even if it be conceded that the plaintiff did not have, or should not have had, knowledge of a compensable injury for the first 6 months, the evidence remains that he left work early because of his ankle between July

and December 1961. Yet for a period of 33 months, plaintiff never consulted a doctor.

There can be no question that the plaintiff knew that he had a physical disability, and that it was due to his employment. It might be said that the mere fact that the plaintiff did not know the full extent of his injury from a medical standpoint does not make it latent, particularly where the medical facts were reasonably discoverable. See Letteau v. Reynolds Electrical & Engineering Co., 60 N. M. 234, 290 P. 2d 1072. Although each case must be determined on its own facts and circumstances, the evidence here establishes that it should have become reasonably apparent that the plaintiff had a compensable disability more than 1 year before filing his petition.

We hold that where an injury is latent and progressive, the tolled statute of limitations begins to run against an employee from the time it becomes reasonably apparent, or should have become reasonably apparent, that he has a compensable disability of any class from an accident (whether he is working or not) if the employee is aware that the disability is due to his employment.

For the reasons stated, the judgment should be and is affirmed.

AFFIRMED.