MATTHEW A. O'CONNOR, APPELLEE, V.
ANDERSON BROTHERS PLUMBING AND HEATING,
APPELLEE, AND UNITED STATES FIDELITY AND
GUARANTY COMPANY, APPELLANT.

300 N.W.2d 188

Filed January 9, 1981. No. 43080.

Ross, Schroeder & Fritzler for appellant.

Charles H. Beatty and John T. Tarrell of Tarrell & Alexander for appellee O'Connor.

Heard before KRIVOSHA, C.J., McCOWN, BRODKEY, and HASTINGS, JJ., and STUART, District Judge.

STUART, District Judge.

This is a workmen's compensation case. The only issue presented is whether the action was barred by the 2-year statute of limitations, Neb. Rev. Stat. § 48-137 (Reissue 1978).

The one-judge compensation court entered an order of dismissal, holding that the plaintiff's claim was barred. On rehearing, the three-judge panel of the Workmen's Compensation Court reversed, and found

that plaintiff's condition was latent and progressive and his claim was, therefore, not barred by the statute of limitations. Defendant United States Fidelity and Guaranty Company appeals. We affirm.

On September 21, 1965, plaintiff was laying a sewer line in a ditch when the ditch caved in on him. Plaintiff suffered an injury to his neck, together with a fractured left clavicle and dislocation of his shoulder. On August 17, 1967, the Workmen's Compensation Court made an award to plaintiff for 24 weeks of temporary total disability and for a 7 percent permanent partial disability to the body as a whole, which latter award resulted in a payment of $5.73 per week for 276 weeks. The last payment to plaintiff was made on November 15, 1971.

The evidence showed that on October 8, 1977, when operating a cigarette machine, the plaintiff's left arm went completely dead, and there was constant pain in his fingers and pain radiating down through his neck and shoulder. After treatment by several different doctors, an orthopedic surgeon surgically removed approximately 2 inches of the collarbone from the left shoulder in February 1978. Plaintiff was then referred to different neurologists and neurosurgeons; a myelogram was administered in August 1978; and this was followed on September 12, 1978, by an anterior cervical diskectomy at C-4-5 and C-5-6, with fusion (fusion of cervical vertebrae).

This action was commenced August 25, 1978, 10½ months after the cigarette machine incident; almost 13 years after the original injury; and well over 6 years from the time of the making of the last payment to plaintiff under the original Workmen's Compensation Court award.

The determination turns on whether or not plaintiff's claim to increased disability was based upon an injury that was latent and progressive, and did not definitely manifest itself until October 1977.

From the time of the accident until the original

award, plaintiff was examined or treated by five different doctors: a general practitioner, three orthopedic surgeons, and a neurologist. From the original award until the cigarette machine incident, plaintiff continued to complain of pains in his neck and head and in his left shoulder and arm. He repeatedly consulted his personal physician and periodically received ultrasonic treatments and physiotherapy for relief of pain in the neck, shoulder, and left arm. In July 1968, plaintiff was referred by his personal physician to one of the original treating orthopedic surgeons for treatment of continuing pain, dizziness, and nausea. At the time of the examination this doctor told the plaintiff, "It's all in your head. Go see a psychiatrist." This doctor returned a written report in which he recommended exercises and intermittent use of traction, and further suggested "a complete psychiatric evaluation." These ultrasonic treatments and physical therapy continued in the years 1968, 1969, 1971, 1972, 1973, and 1974 for the relief of pain as described. In addition, plaintiff was given other treatment for pain, including hot packs and drugs. During this same time span, plaintiff's doctor considered the possibility of multiple sclerosis and communicated this possible diagnosis to the plaintiff. Although there was continuing pain and the other symptoms described, and the plaintiff became less active, he continued at his work as a plumber until the cigarette machine incident in October 1977. Following this incident, plaintiff was examined and treated by some seven different doctors, and, finally, in August 1978 plaintiff's condition was fully diagnosed following the administration of a myelogram. This diagnosis found plaintiff's condition was the result of the injury that occurred on September 21, 1965, and the operation to fuse cervical vertebrae followed.

Neb. Rev. Stat. § 48-141 (Reissue 1978) reads in part: ". . . the amount of any agreement or award payable periodically for six months or more may be

modified as follows: . . . if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury . . . ."

Neb. Rev. Stat. § 48-137 (Reissue 1978) reads in part: "In case of personal injury, all claims for compensation shall be forever barred unless, within two years after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within two years after the accident, one of the parties shall have filed a petition as provided in section 48-173. . . . When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment. . . ."

A proceeding under § 48-141 to modify a previous award of the compensation court to recover additional compensation for an increase in incapacity can only be brought within 2 years of the time the employee knows or is chargeable with knowledge that his condition has materially changed, and there is such a substantial increase in his disability as to entitle him to additional compensation. *Peek v. Ayers Auto Supply*, 157 Neb. 363, 59 N.W.2d 564 (1953).

However, pain alone is not compensable under our statute. *Borowski v. Armco Steel Corp.*, 188 Neb. 654, 198 N.W.2d 460 (1972). In addition, it must be remembered that plaintiff was awarded a 7 percent permanent partial disability to the body as a whole. Prior to the cigarette machine incident it is questionable if plaintiff could have proved a disability greater than that already awarded. His disability was one of continuing pain which plaintiff tried to have treated and further diagnosed, without success. His doctors either did not know what was the matter, or thought it was "all in his head."

We have previously stated: "If an employee suffers an injury, which appears to be slight but which is

progressive in its course, and which several physicians were unable to correctly diagnose, his failure to file claim or bring suit within the time limited by law will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident." *Borowski v. Armco Steel Corp., supra* (syllabus of the court).

"It has been held many times by this court that failure to file claim, or bring suit within the specified time, does not defeat the right to compensation where the injury is latent, provided the notice is given and the action commenced within the statutory period after the employee has knowledge that compensable injury has resulted." *Astuto v. V. Ray Gould Co.*, 123 Neb. 138, 141, 242 N.W. 375, 376 (1932).

"It is unreasonable to conclude that an injury is not latent merely because the plaintiff suffered pain, when thereafter several physicians were unable to correctly diagnose his injury. In Welke v. City of Ainsworth, 179 Neb. 496, 138 N.W.2d 808, we reaffirmed the rule of Astuto v. Ray Gould Co., 123 Neb. 138, 242 N.W. 375: 'If an employee suffers an injury, which appears to be slight, but which is progressive in its course, and which several physicians were unable to correctly diagnose, his failure to file claim, or bring suit within the time limited by law, will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident.' See, also, Ohnmacht v. Peter Kiewit Sons Co., 178 Neb. 741, 135 N.W.2d 237." *Williams v. Dobberstein*, 182 Neb. 862, 864-65, 157 N.W.2d 776, 778 (1968).

Under our present procedure, the Workmen's Compensation Court was the trial court. With reference to an appeal upon which there is conflicting evidence, we have held: "On appeal of a workmen's compensation

case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence." *Borowski v. Armco Steel Corp., supra* (syllabus of the court).

The finding of the Workmen's Compensation Court that plaintiff's claim was timely brought was correct and should be affirmed.

AFFIRMED.