JAY K. THOMAS, APPELLANT, V. KAYSER-ROTH CORPORATION, APPELLEE.

320 N.W.2d 111

Filed May 28, 1982. No. 44478.

E. Terry Sibbernsen of Welsh, Sibbernsen & Bowen, for appellant.

Richard R. Endacott of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

KRIVOSHA, C.J.

The instant appeal addresses the question as to whether a workmen's compensation claim made by the appellant, Jay K. Thomas, on December 7, 1979, is barred by the statute of limitations. A single judge of the Nebraska Workmen's Compensation Court found that the claim was barred by the statute of limitations. This finding was affirmed on rehearing by a three-judge Workmen's Compensation Court, and Thomas has perfected his appeal to this court. We agree with the conclusion reached by both the single-judge Workmen's Compensation Court and the three-judge panel hearing the case on rehearing, and, accordingly, affirm the judgment.

Thomas began working with the appellee, Kayser-Roth Corporation, in 1958. Kayser-Roth manufactures women's apparel and Thomas was hired to sell the apparel to department stores and specialty shops in a designated territory. Sample garments were carried in garment bags which, when fully loaded, weighed from 40 to 60 pounds each. The bags were carried in the trunk of Thomas' car, and at each stop he was required to lift the bags up out of the trunk

and place them on racks in the department store.

In 1961 Thomas began to experience pain in his back, and after consulting with a physician it was discovered that he had sustained a herniated disc. In October of 1962 a laminectomy was performed on Thomas, and following a period of recovery he returned to work as a traveling salesman for Kayser-Roth.

In 1973, while calling on customers for Kayser-Roth in the Kearney, Nebraska, area, Thomas experienced a sharp pain in his back. The pain became so severe that, in his own words, "It doubled me over." On that day Thomas checked himself into a motel room in Kearney, Nebraska, and took a hot bath and attempted to apply as much heat as he could to the back to eliminate the pain. At various times during the hearings and in his deposition Thomas has described the pain as "severe," "acute," "a disaster," "agonizing," and "devastating."

The following day he was examined by a chiropractor in Kearney, Nebraska, and the chiropractor was able to relieve the muscle spasm he was experiencing in his back to the extent that he was able to drive from Kearney, Nebraska, to his home in Omaha, Nebraska. He did not work for the next 3 workdays and did not seek any other medical treatment except that which he had received from the chiropractor in Kearney.

Thomas continued to experience pain in his back in various degrees throughout the balance of his employment with Kayser-Roth, and, in fact, in December of 1975 Thomas bought a motor home which he converted into a showroom. This was done, he said, to eliminate the need to lift the garment bags out of the trunk. He described his ability to do his work after the 1973 accident as "not being as free and easy." He was also unable to bend and had to kneel. These problems, in varying degrees of severity, per-

sisted from 1973 to 1979 when Thomas' employment was terminated. Thomas makes some claim that the termination was in some manner related to his back problem and, in particular, to a specific experience in February of 1979 while showing wearing apparel to customers in Des Moines, Iowa. The record does not, however, support that claim. He sought no medical treatment for the alleged problem in February of 1979 and, in fact, did not testify concerning the alleged February 1979 difficulty until the rehearing. In his petition before the Nebraska Workmen's Compensation Court, he indicated that his injury was "mental depression and back pain," and that the accident and injury occurred in the following manner: "Depression after false reason for termination." What is clear from the record is that there is no evidence that between 1973, when the accident occurred, and 1979, when his employment was terminated, Thomas suffered any sudden disability which affected his ability to work or required any greater medical attention than what was required at any time after the accident in 1973. It was not until March 23, 1981, 2 years after his employment terminated, that Thomas was examined by Dr. Gerald Paul, an orthopedic surgeon practicing in Omaha, Nebraska. Dr. Paul diagnosed Mr. Thomas' condition as a herniated disc at L5-S1, occasioned by the lifting episode in 1973. When specifically asked whether he thought the injury which occurred in 1973 would be considered latent and progressive, Dr. Paul said he did not think so.

Thomas concedes that, under the provisions of Neb. Rev. Stat. § 48-137 (Reissue 1978), his action, on its face, is barred by the statute of limitations. He maintains, however, that his failure to file a claim within the statutory period is excused by what we have described as the "latent exception," which provides that if an employee suffers an injury which appears to be slight but which is progressive in its

course, and which several physicians are unable to correctly diagnose, the worker's failure to file claim or bring suit within the time limited by law will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident. See, *O'Connor v. Anderson Bros. Plumbing & Heating,* 207 Neb. 641, 300 N.W.2d 188 (1981); *Borowski v. Armco Steel Corp.,* 188 Neb. 654, 198 N.W.2d 460 (1972). While Thomas is correct about the law, he is in error with regard to his interpretation of the law as it applies to this case. In both the *O'Connor* case and the *Borowski* case, and cases of similar import where we have applied the latent exception, the evidence disclosed that indeed the initial accident was either trifling in nature or appeared to be healed and subsequently the injury began to get progressively worse. Specifically, in *Borowski* the employee was advised by the treating physician that while he suffered damages to the muscles of his upper leg and that it would be a slow healing process, he should not be alarmed and would fully recover. After a period of months the pain subsided. Thereafter, when the pain reoccurred, he consulted a physician on seven occasions and was assured that his condition was normal. It was not until sometime later that he was referred to an orthopedic surgeon who performed a myelogram and discovered the herniated disc caused by the initial injury.

Likewise, in *O'Connor* the employee was initially injured in September of 1965 while laying a sewer line in a ditch. He received compensation for this injury and continued thereafter working. It was not until October of 1977, when operating a cigarette machine, that the employee's left arm went completely dead. From the time of the accident until the original award, plaintiff was examined or treated by five different doctors—a general practitioner, three or-

thopedic surgeons, and a neurologist—none of whom diagnosed his subsequent condition. He repeatedly consulted his personal physician and periodically received ultrasonic treatments and physiotherapy. He was advised by a treating physician: "It's all in your head. Go see a psychiatrist." It was not until the incident resulting in the complete disability of his left arm that the worker's condition was fully diagnosed following the administration of a myelogram.

No such facts may be found in the present case. In fact, the present case is more like the case of *Ohnmacht v. Peter Kiewit Sons Co.,* 178 Neb. 741, 135 N.W.2d 237 (1965), than *O'Connor* or *Borowski.*

In *Ohnmacht,* the employee, a carpenter, tripped and sprained his ankle on July 15, 1960. He continued to work the rest of the day. He was seen by a physician and received some medication for the pain. At no time did he lose any compensable work time because of his injury. Later in 1960 the pain got worse when he worked on uneven surfaces or plowed ground. There were two occasions between July and December 1961 when the plaintiff left work early because of pain. Since the accident, he limped when working. The plaintiff always attributed his pain and difficulty with his ankle to the accident of July 1960. In holding that the injury was not latent and progressive and that, therefore, the statute of limitations did apply, we noted that there was no medical testimony as to the progressiveness, if any, of the injury following the accident. In applying the statute of limitations and dismissing the petition, we said in *Ohnmacht, supra* at 744-45, 135 N.W.2d at 239: "While it may not have been specifically so held, our cases are clear that the burden of proving that an injury is latent and progressive so as to toll the statute of limitations is upon the plaintiff. See, Bame v. Lipsett, Inc., 172 Neb. 623, 111 N.W.2d 380; Rahfeldt v. Swanson, 155 Neb. 482, 52 N.W.2d 261." We fur-

ther said in *Ohnmacht* at 746, 135 N.W.2d at 240: "It might be said that the mere fact that the plaintiff did not know the full extent of his injury from a medical standpoint does not make it latent, particularly where the medical facts were reasonably discoverable."

In the instant case, the evidence clearly establishes that the cause of Thomas' present condition was caused by the injury in 1973, and while, according to Dr. Paul, the injury "probably [has] gotten a little bit worse as the years have gone on as anything left untreated will," the evidence did not establish that it had gotten progressively worse. Nor does the evidence establish that the injury could not have been diagnosed if he had sought treatment in 1973. The injury in 1973 was not slight or trifling and Thomas was never advised by anyone that he was no longer injured. He suffered immobility and loss of work as a result of the 1973 accident. He continued to have difficulty with his back, so much so that in 1975 he was required to change the manner in which he conducted his business. He purchased a motor home which he converted into a showroom to avoid having to lift the garment bags. He did this, by his own admission, because of the difficulty he had in attempting to lift the garment bags out of the trunk. These problems, in varying degrees of severity, persisted from 1973 to 1979 and beyond. Both the one-judge court and, again, the three-judge court found that the injury was not latent or progressive and therefore not within the "latent exception" to the statute of limitations. We are unable to say that the evidence does not amply support that conclusion. In reviewing a similar situation, we said in *McGahan v. St. Francis Hospital,* 200 Neb. 406, 409, 263 N.W.2d 845, 846 (1978): "We are conscious that in reviewing a decision of the Workmen's Compensation Court, its determination is entitled to the same force and effect as a verdict of a jury in a civil case and will not

be upset where there is evidence in the record to sustain its findings. See Fite v. Ammco Tools, Inc., 199 Neb. 353, 258 N.W.2d 922.'' The evidence in this case supports the compensation court's conclusion that Thomas' attempt to come within the latent and progressive exception fails. Were we to hold otherwise, we would effectively repeal the provisions of § 48-137. We are not free to do so.

The compensation court's determination that there was insufficient credible evidence to establish proof of any accident in 1979 must likewise be affirmed. Thomas made no mention of the alleged 1979 incident at the first hearing or during the taking of his deposition. He likewise made no mention of it to either Dr. Paul or to Dr. Joseph Gross, who examined him on April 22, 1981. The compensation court was correct in concluding that the evidence regarding an alleged 1979 accident was insufficient. We are not at liberty to substitute our views for those of the Workmen's Compensation Court regarding questions of fact if there is evidence in the record to substantiate its conclusions. *Meyer v. First United Methodist Church,* 206 Neb. 607, 294 N.W.2d 611 (1980); *Riha v. St. Mary's Church & School, Inc.,* 209 Neb. 539, 308 N.W.2d 734 (1981).

For these reasons the decision of the three-judge compensation court must be affirmed.

AFFIRMED.