IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

CHAVEZ V. TYSON FRESH MEATS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARIA CHAVEZ, APPELLANT,

V.

TYSON FRESH MEATS, INC., APPELLEE.

Filed September 3, 2024.    No. A-23-1002.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Jon Rehm, of Rehm, Moore & Rehm, P.C., L.L.O., for appellant.

Haleigh B. Carlson, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Maria Chavez appeals the order of the Nebraska Workers' Compensation Court, which dismissed her petition for failing to meet the requisite burden to demonstrate a causal connection between her alleged injuries and her workplace accident. For the reasons that follow, we affirm.

### BACKGROUND

On January 21, 2021, Chavez was working for Tyson Fresh Meats, Inc., when she was involved in an accident while operating the feed strickler machine. Part of operating this machine involves cleaning it when it gets clogged. To clean the machine, the operator removes its lid and sprays it down with a pressure hose.

On the day of the incident, Chavez lifted the machine's lid to clean it and alleged that the lid fell off and hit her between her ribs and hip. Following this accident, she was taken to an on-site nursing station where she received treatment. The nurse's note from this visit indicated that Chavez "was lifting a metal lid when she got a sudden pain in her left shoulder area and downward her

- 1 -

back." The note also detailed that although Chavez reported pain, there was "no redness, swelling, or decolorization noted."

The next day, January 22, 2021, Chavez reported to work and spoke to someone about her pain. The note from this interaction states that she reported pain and had swelling above the left side of her waist. It also reported that she could not bend, stoop, or raise her arms up above her shoulders. The note detailed that Chavez was instructed to see her personal doctor to receive a list of restrictions so Tyson could attempt to find her another position that would not cause her further harm.

Four days later, on January 25, 2021, Chavez sought treatment from her family physician, Dr. John Ford. She continued to see Ford several times over the next year.

On June 1, 2021, Chavez filed a petition in the compensation court alleging that she suffered an injury to her "low back" from an accident that occurred while she was working for Tyson. A trial was held on August 28, 2023. At the trial, Chavez testified on her own behalf and Clorinda Montanez, Emely Perez, and Bobbie Samayoa testified for Tyson.

*Trial.*

Chavez, who speaks Spanish, testified through a court certified interpreter, that she had been operating the feed strickler machine for about 6 months before the incident occurred. She stated that because the machine routinely got clogged, she had to clean it every 15 minutes. She explained that cleaning the machine involved lifting its lid and washing it out with a pressure washer. She described the lid as "heavy" and said she would lift the lid to about eye-level with her left hand and use her right hand to clean the machine. She testified that because the lid was not attached to anything, when she lifted the lid on this occasion, it fell and landed on her between her left ribs and hip. She later testified that throughout her 6 months of using the machine, the lid was never attached to the body of the machine.

Chavez explained that before the incident she had shoulder pain from the "movements and lifting of boxes and all the quick movements" she had to do. But she clarified that the pain from getting hit by the lid was different because it affected her ribs. On several occasions throughout her testimony, she specifically identified the area between her left ribs and hip as the source of her pain.

Montanez then testified. She works for Tyson as an HR partner. She testified about a letter Tyson sent Chavez about a year after her injury inviting her to "bid on" certain open positions that were commensurate with her physical restrictions of no stooping or bending. She then described that around 5 percent of the jobs at Tyson could be done with those restrictions.

Perez then testified. She is a safety specialist for Tyson and has worked there for 5 years. She described her role as making sure the floor, machinery, and team members are working safely. She was asked about the feed strickler machine and why someone would need to open its lid. She stated that a team member might lift the lid to fix a band or to wash it down. She then testified that the feed strickler's lid is attached to the machine by two hinges. And she explained that in the 5 years she has been a safety specialist, she has never been aware of a time when the lids were not attached this way. She described that while the hinges could be removed for maintenance, they would be reattached afterward, and a team member would never work on the machine while the lid was not attached.

Perez was then asked about Chavez' claim that the lid was not attached when she was injured. Perez stated that for the lid to "go up at all" it needed to be attached to the hinges. She was then asked whether the lid could have fallen and hit Chavez between her ribs and hip if the lid was attached to the machine. She testified that this was not possible unless Chavez was leaning "all the way in" the machine while standing on a stool. And she indicated that there was no reason for Chavez to have ever needed to do that. Also, upon being asked by the court, Perez identified the location of the hinges in one of the photos received as evidence.

On cross-examination, Perez testified that a worker using the feed strickler machine would only need to lift the lid about once a day to clean it. When asked about Chavez needing to clean the machine every 15 minutes and whether that indicated problems with the machine, Perez agreed that if that was the case, the machine was not working properly. She later testified it was "possible" that the machine needed to be cleaned out every 15 minutes. She then testified that it was possible for a worker to lean over the machine to clean it, but an average sized person would not be able to because there is a platform in the way.

Samayoa then testified. She works as a case manager for Tyson. As a case manager she works with health services, team members, doctors, and insurance adjusters. When asked if the feed strickler lid could have been lifted without hinges, she stated that she did not know. But she agreed with Perez that the lid could not have struck Chavez' rib and hip area unless "she was fully bent inside of [the] machine." Samayoa then generally testified about the nurse's notes and how it was Tyson's practice for the nurses to include all the information given by the team member in their notes. She then reviewed the nurse's notes from the day of Chavez' incident and acknowledged that they did not mention anything about the lid coming off the machine. She then stated that she would expect that information to be in the notes if Chavez reported it to the nurse. Samayoa was also asked about a form Chavez filled out after the incident. Samayoa acknowledged that this form did not mention anything about the lid falling off the machine. Instead, the form reflected that Chavez claimed her "back cracked" when she was lifting the lid, and she was subsequently unable to stand up straight.

Chavez then testified again. She testified that the machine in the photographs was different than the machine she worked on. She then re-described how the lid was not attached to the machine and how she was injured when the lid fell on her.

*Medical Evidence.*

While Ford did not testify at trial, his notes from Chavez' visits were offered and received as evidence. His first note following the accident is from January 25, 2021. In this note, Ford reported that Chavez had left shoulder and back pain following a "specific injury" at work. He noted that "[t]he injury involved the upper back, mid back, and lower back" and resulted "from lifting." He further clarified that her symptoms were in "the left upper back, left mid back, and left lower back." The note then provided: "Back Pain: STATED SHE WAS LIFTING AND WASHING HEAVY METAL LIDS AT WORK WHEN ONE OF THE LIDS WAS GOING TO FALL. Pt BENT OVER QUICKLY TO STOP THE FALL OF THE LID AND THEN HAD A HARD TIME STRAIGHTEN [sic] UP." This same entry appeared in the notes for Chavez' follow-up visits on February 1, March 26, and April 13.

For Chavez' April 13, 2021, visit, Ford's note included an entry for "Left Flank Pain" and reported Chavez was having trouble sleeping on her left side. For her visit on March 28, Ford's note states Chavez' injury involved "the upper back and mid back" and reported that her symptoms were in the "left mid back." The note from her July 12 visit indicated she was suffering "[l]eft-sided back pain." The entry from her September 16 visit reported that she was experiencing pain in her shoulder, left side, and left flank. This entry also provided that "The onset of the side pain has been gradual (LEFT SIDE W RIB PAIN) and has been occurring in a persistent pattern for months." This same entry also appeared in the note from Chavez' January 14, 2022, visit.

On January 13, 2023, Ford signed a letter titled "Medical Report" which provided:

The purpose of this report is to clarify my opinion on a check-the-box letter dated April 25, 2022. In that letter, I checked a box stating that [Chavez'] back pain was caused or significantly contributed to the injury or condition. It is more accurate to state that I do not have sufficient information to state whether [Chavez'] back pain was caused or significantly contributed to the injury or condition. [Chavez] told me that she injured her lower back at work, and that she had no pain before the injury, and consistent pain since. There were no objective findings on exam except her statement that she had pain when I touched her back or her left flank. My diagnosis of "back pain" is based solely on [Chavez'] statements of her condition. There were no other studies to document the cause of her pain. I do not have any additional information. This opinion supersedes all other opinion[s] I have made regarding causation of [Chavez'] condition and is made within a reasonable degree of medical certainty.

A report by Dr. Donato Borrillo was also offered and received as evidence. In this report, Borrillo stated that Chavez "suffered a left-sided, lower back injury while working for Tyson." The three-page report then very briefly recapped her treatment, medications, and the physical exam conducted by Borrillo. The conclusion of this report was that Chavez suffered a 12 percent permanent partial impairment to her whole person.

*Court's Order.*

On November 7, 2023, the compensation court issued its order dismissing Chavez' petition with prejudice. The order first outlined Ford's reports concerning Chavez' injury and symptoms. It noted that these reports did not mention Chavez' left flank pain until her fourth visit on April 13, 2021. It also discussed Chavez' testimony and her repeated assertion that the source of her injury, and current impediment, was the feed strickler lid hitting her between the left ribs and hip. The court specifically observed that when asked where the pain was coming from, Chavez did not point to her shoulder or lower back, but instead focused on the area just above her left hip. The court then reviewed the nurse's note from the day of the accident and Ford's initial visit note, which both indicated Chavez was initially being treated for left shoulder and back pain.

The court then discussed how the record was not clear as to what injury Chavez claimed to have sustained or how it was caused. It cited Ford's January 13, 2023, letter where he explained that he could not state with a reasonable degree of medical certainty that Chavez' work place accident caused or significantly contributed to her injury and condition. It also concluded that Borrillo's report failed to identify Chavez' injury. With this lack of information, the court

essentially found that it was unable to decipher if the injury was to Chavez' left shoulder, low back, mid back, upper back, or left side and whether the lid hit her back, as was previously claimed, or her side, as she claimed at trial. However, the court stated that "[r]egardless the location of the injury, there are no competent medical opinions that [Chavez] sustained any injury in the January 21, 2021[,] work accident." It continued to state, "The most that can be gleaned from the medical records is that [Chavez] experienced pain as a result of the January 21, 2021, incident." And then it recognized that "pain alone is not compensable under [Nebraska's workers' compensation] statute."

As such, the court determined the medical reports and testimony were insufficient to establish a causative link between Chavez' alleged injuries and the January 21, 2021, workplace accident. Accordingly, the court concluded that Chavez failed to meet her burden of proof to demonstrate a causal connection between her alleged injuries and the workplace accident.

Chavez now appeals that decision.

## ASSIGNMENTS OF ERROR

Restated, Chavez assigns that the compensation court erred by (1) finding that she failed to meet her burden of proof and (2) relying too heavily on Ford's letter concerning causation when the remaining record provided adequate evidence that she suffered a compensable injury.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018).

Determinations by a trial judge of the compensation court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id*. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless they are clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## ANALYSIS

To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment caused an injury which resulted in disability compensable under the act. *Kaiser v. Metropolitan Util. Dist., supra.*

*Burden of Proof.*

Chavez assigns the compensation court was clearly wrong when it concluded that she did not meet her burden of proof. Specifically, she asserts the court mischaracterized her testimony

and Ford's notes when it found that there was insufficient evidence to link the workplace accident with her injuries.

Chavez argues that despite Ford's letter indicating he was unable to identify the cause of her injuries, the record supports a finding that she suffered impairment and pain due to the workplace accident. She essentially argues that regardless of the inconsistent evidence concerning where and how she was injured, her medical records demonstrate her consistent reporting of injury to her left side or left shoulder following the accident.

A workers' compensation claimant has the evidentiary obligation to present medical testimony that is sufficiently definite and certain to permit drawing a conclusion that there is a causal connection between the accident and the disability. *Edmonds v. IBP, Inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). The determination of causation is, ordinarily, a matter for the trier of fact, whose factual findings will not be set aside unless clearly wrong. *Id.*

We determine that the evidence supports a finding that Chavez' injuries were not plainly apparent. While the record is consistent that Chavez suffered discomfort following the incident, it is unclear as to how she was injured and what injury she sustained. The nurse's note from the day of the accident reports that she was suffering shoulder and upper back pain. Ford's note from her visit four days later indicates that she was experiencing pain in her left shoulder as well as in her upper, mid, and lower back. And it was not until her fourth visit with Ford on April 13, 2021, that there were reports about pain in her left flank. More so, nowhere in Ford's notes does he diagnose Chavez with a particular condition relevant to her symptoms. Instead, each note only describes Chavez experiencing pain in various areas around her back, left shoulder, or left flank. Because the nature of Chavez' injury is not plainly apparent, expert opinion was necessary to link the injury to the workplace accident.

We determine the compensation court's conclusion that Chavez failed to provide sufficient evidence demonstrating a causative link between her injuries and the workplace accident was not clearly wrong. While the medical records are consistent that Chavez suffered pain because of this accident, none of them identify the cause of her pain. The Nebraska Supreme Court has repeatedly held that pain alone is not compensable under the workers' compensation statute. *Wilson Concrete Co. v. Rork*, 216 Neb. 447, 343 N.W.2d 764 (1984); *O'Connor v. Anderson Bros. Plumbing & Heating*, 207 Neb. 641, 300 N.W.2d 188 (1981). While Chavez met with Ford numerous times and complained of pain in her shoulder, back, and left flank at different times, no diagnosis was ever made as to the cause of this pain. Likewise, no specific injury was ever identified. This is highlighted by Ford's January 13, 2023, letter, where he specifically stated that he was unable to determine the cause of Chavez' injury and that his diagnosis of "back pain" was based solely on her own statement of her condition. Without any expert opinion in the record linking Chavez' pain to a specific injury that could then be traced to the workplace accident, we determine the compensation court's conclusion that Chavez failed to meet her burden was not clearly wrong.

*Weight Given to Ford's Comments on Causation.*

Chavez next assigns the compensation court erred by placing an inappropriate amount of weight on Ford's January 13, 2023, letter that explained he was unable to identify the cause of her injuries. She essentially contends the compensation court overly relied on Ford's letter rather than the whole body of evidence. She then asserts that if the court had considered the entire record, it would have found that Chavez testified to a compensable injury that was supported by medical evidence.

We observe that this assignment of error is not fundamentally different from her first assignment. Chavez essentially argues that if we reweigh the evidence by giving less weight to Ford's letter and more weight to "the body of evidence," we could find that she met her burden of proof. Beyond her lack of specificity as to what evidence supports such a finding, she fails to acknowledge the necessity of expert opinion in this matter. As discussed above, when an injury is not readily apparent an expert opinion is needed to establish the causal relationship between the employment and the injury or disability. See *Potter v. McCulla,* 288 Neb. 741, 851 N.W.2d 94 (2014).

Nevertheless, she goes on to assert that if the compensation court had weighed the evidence more appropriately, it would have found in her favor. But this argument fails to consider that in a bench trial of an action at law, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. See *Liljestrand v. Dell Enterprises, Inc.*, 287 Neb. 242, 842 N.W.2d 575 (2014). Accordingly, in reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

Similar to our analysis in the previous assignment of error, we determine that the compensation court's conclusion was not clearly wrong. Nowhere in the record does an expert provide evidence to link Chavez' pain to an injury arising from the workplace accident. In contrast, Ford's letter specifically acknowledges his inability to do so. And contrary to Chavez' assertion, the remaining "body of evidence" does not satisfy this burden.

The remaining evidence gives conflicting information as to how Chavez was injured and where that injury manifested. The nurse's note from the day of the accident and the parties' joint trial memorandum state Chavez' injury suddenly occurred when she was lifting the machine lid. The form Chavez filled out the day of the accident states that her pain arose when her "back cracked" while lifting the lid. Ford's notes from her first, second, third, and fourth visits with him following the accident state that the pain arose after she bent over quickly to stop the lid from falling. And finally, at trial, Chavez testified multiple times that the injury was caused when the lid fell on her after she lifted it.

Next, the record is inconsistent as to what pain Chavez suffered because of the accident and what parts of her body were affected. After reviewing the nurse's notes from the day of the accident, the report Chavez made to Tyson the following day, the form she filled out for Tyson detailing her injury, and Ford's notes, it is unclear whether the workplace accident caused Chavez low back pain, mid back pain, upper back pain, left shoulder pain, or left flank pain. But even if the record was clearer as to the nature of her pain, it remains that there is still no expert opinion linking this pain to an injury that arose out of the workplace accident.

In its order dismissing Chavez' petition, the compensation court noted these inconsistencies. But as we do here, it determined that regardless of where Chavez experienced pain, the record lacks any expert opinion linking Chavez' pain to a specific injury that arose from the workplace accident. Therefore, we determine the compensation court's conclusion that she failed to meet her burden of proof was not clearly wrong.

## CONCLUSION

We conclude that the compensation court was not clearly wrong in determining that Chavez failed to demonstrate a causal connection between her alleged injuries and the workplace accident.

AFFIRMED.