CURTIS W. CEMER, APPELLEE, V. HUSKOMA CORPORATION AND ARGONAUT INSURANCE COMPANY, APPELLANTS.

375 N.W.2d 620

Filed November 1, 1985.   No. 85-216.

Kevin Colleran of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

Robert R. Gibson of Gibson, Patrick & Wilson, and, on brief, Ronald Rosenberg of Rosenberg Law Offices, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Huskoma Corporation and Argonaut Insurance Company (jointly referred to as Huskoma) appeal from an order entered by a three-judge panel of the Nebraska Workmen's Compensation Court, finding that the appellee, Curtis W. Cemer, had suffered a "latent and progressive injury that was not diagnosed until September, 1983." The three-judge panel reversed the order entered following a hearing before a single judge of the Nebraska Workmen's Compensation Court, who had found that Cemer's claim was barred by the statute of limitations. We affirm the decision of the three-judge panel.

On July 1, 1981, while employed by Huskoma, Cemer was injured when a pickup truck that he was working on rolled off of jack ramps and across his left shoulder, chest, left hip, and left leg. Cemer was taken to the emergency room at McCook Community Hospital, where he was examined by an attending physician. After a series of x rays were taken, it was determined that Cemer had suffered multiple contusions and a broken left foot. Although x rays were taken of Cemer's chest at that time, no chest injury was diagnosed.

Cemer chose to go home after having received an injection to relieve the pain. For approximately 5 days following the date of the injury, he returned to the hospital periodically to receive similar injections, and on July 3, 1981, in the attending physician's office, a cast was placed on his left foot.

Much of the evidence is in conflict, but only a minor portion

of the evidence in conflict is relevant to the issue presented by this appeal. Cemer maintains that he asked the attending physician to refer him to a specialist because he felt "there was something wrong" with his chest. The physician maintains, however, that neither he nor the radiologist detected any injuries to the sternum area and that he had no recollection that Cemer ever complained of chest pain. The physician placed Cemer in a physical therapy program for his shoulder, which began sometime in August. After completing the program, Cemer was released by the attending physician, who later testified that Cemer had still made no mention to him of any injury to the sternum.

Cemer received workmen's compensation benefits following the accident, in the form of temporary total disability payments as well as payments of medical expenses. The date of the last payment to Cemer was September 22, 1981. Between the time that he was released by the attending physician and September of 1983, Cemer worked for various employers, though he did not ever return to work for Huskoma.

While Cemer's testimony before the single judge and before the three-judge panel appears to be in conflict, it is undisputed that, in the summer of 1983, while carrying a bundle of shingles up a ladder, Cemer's chest "popped out of place." Shortly after that incident, Cemer consulted an orthopedic surgeon in Denver, Colorado. The orthopedic surgeon referred Cemer to a cardiovascular and thoracic surgeon, who ordered several special x rays called tomograms. After viewing the tomograms with a radiologist, the cardiovascular surgeon determined that Cemer "could have had a fracture in the past and that there was a very slight displacement at that time." He diagnosed Cemer's present problem as a "malunion of [a] partially healed fracture." He further testified that based upon the history as related to him by Cemer, the chest injury was caused by the July 1, 1981, accident.

Cemer filed his petition in the Nebraska Workmen's Compensation Court on December 22, 1983, more than 2 years after receipt of his last workmen's compensation claim but within the statute of limitations period if the injury to his chest, which occurred on July 1, 1981, is considered to have been

latent and progressive.

Neb. Rev. Stat. § 48-137 (Reissue 1984) provides in relevant part as follows:

> In case of personal injury, all claims for compensation shall be forever barred . . . unless, within two years after the accident, one of the parties shall have filed a petition . . . . When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment.

The 2-year period began to run in this case on September 22, 1981, the date of the last payment. Thus, unless the case falls within some exception to the rule, the action is barred.

One of the exceptions to this rule may be found in *Thomas v. Kayser-Roth Corp.*, 211 Neb. 704, 707-08, 320 N.W.2d 111, 114 (1982), wherein we said that

> if an employee suffers an injury which appears to be slight but which is progressive in its course, and which several physicians are unable to correctly diagnose, the worker's failure to file claim or bring suit within the time limited by law will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident.

In other words, if the injury is deemed to be, at the outset, latent and progressive, the statute of limitations does not begin to run until the employee discovers or should have discovered that he has a compensable disability. *Maxey v. Fremont Department of Utilities*, 220 Neb. 627, 371 N.W.2d 294 (1985).

Huskoma maintains that the instant case is like the case of *Ohnmacht v. Peter Kiewit Sons Co.*, 178 Neb. 741, 135 N.W.2d 237 (1965), where the plaintiff originally sprained an ankle. He continued to work as a carpenter but consistently had difficulty with his ankle and on one or two occasions left work because of pain. The plaintiff there did not consult a doctor for 33 months. The court found the injury not to be latent and progressive and thus the cause of action was barred by the statute of limitations.

Cemer, on the other hand, maintains that the instant case is controlled by *O'Connor v. Anderson Bros. Plumbing &*

*Heating*, 207 Neb. 641, 300 N.W.2d 188 (1981). There the plaintiff was injured in 1965 and continued to suffer pain for the next 12 years. However, throughout the whole time, he was examined or treated regularly by different physicians. In 1977 his arm suddenly went dead when he was operating a cigarette machine. At that time the full extent of his injuries was discovered, and it was held that the claim was not barred by the statute of limitations.

In the instant case the three-judge panel relied heavily on our decision in *Borowski v. Armco Steel Corp.*, 188 Neb. 654, 198 N.W.2d 460 (1972). There, the employee was injured in 1965 when a beam fell on his leg. Several months after treatment the pain subsided. In 1970 Borowski was diagnosed as suffering a herniated disk. This court found that the herniated disk condition was latent and progressive and the injury not barred by the statute of limitations.

Although the instant case does not fall completely within any one of the three cases, upon examination of all of the evidence in this case and even disregarding the evidence of Cemer which is in conflict, we believe it cannot be said as a matter of law that the three-judge panel was clearly wrong. We have repeatedly held that

> findings of fact made by the Nebraska Workmen's Compensation Court on rehearing have the same effect as a jury verdict in a civil case, and an order disposing of a case, whether it be to enter an award or cause a dismissal of the claim, may not be set aside where the findings are supported by the evidence. The facts are not reweighed on appeal.

*Maxey v. Fremont Department of Utilities, supra* at 631, 371 N.W.2d at 298.

In the instant case the evidence establishes that Cemer had an injury which was reported and for which he sought medical treatment. The compensation court could reasonably have found from the evidence that the injury to Cemer's chest was of such nature that it could not have been detected at the time the injury occurred. The attending physician maintains that he made no finding of an injury to the chest and gave no indication to Cemer that such an injury had occurred. On the other hand,

an automobile had rolled across his chest and down his body. He had, indeed, suffered an injury which caused a great deal of pain and which required physical therapy. That he therefore continued to suffer some pain following treatment, which he may have attributed to the diagnosed injury, is not so difficult to understand. We therefore agree with the three-judge panel that the chest injury, at its inception, was latent and progressive.

This means that the statute of limitations was tolled until it became reasonably apparent to Cemer, or should have become reasonably apparent, that a compensable disability was present. *Maxey, supra*. The three-judge panel found this to be in September of 1983 when Cemer's chest "popped out." The critical evidence which, if believed by the three-judge panel, was sufficient to support this finding is the testimony of the thoracic surgeon. Drawing from that testimony, it was reasonable for the three-judge panel to find, despite Cemer's bouts of pain, that until the chest "popped out" and tomograms of Cemer's chest were taken, the diagnosis could not have been reasonably made. An examining physician would need both the tomograms and Cemer's description of his chest "popping out" to make his diagnosis of the malunion of the sternum. This did not occur until September 1983. To reverse the decision of the three-judge panel, we would be required to reweigh the evidence, an act we are not permitted to perform. In view of the fact that there is evidence to support the decision of the three-judge panel, we affirm the decision.

AFFIRMED.