922 P.2d 577

**William GARNSEY, Worker–Appellee,**

v.

**CONCRETE INC. OF HOBBS and Builder's Trust of New Mexico, Employer/Insurer–Appellants.**

No. 16888.

Court of Appeals of New Mexico.

June 28, 1996.

Certiorari Denied Aug. 15, 1996.

William G.W. Shoobridge, Hobbs, for Appellee.

Christopher W. Nickels, Julie A. Wittenberger, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for Appellants.

## OPINION

APODACA, Chief Judge.

1. Concrete Incorporated and Builder's Trust of New Mexico (referred to collectively as Employer) appeal the workers' compensation judge's (the judge) decision granting William Garnsey (Worker) benefits for an injury he sustained as an employee. Employer argues that Worker did not provide timely notice of the accident under NMSA 1978, Section 52–1–29(A) (Repl.Pamp.1991) (effective Jan. 1, 1991). We disagree with Employer's contention and thus affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Every employee who drove a truck for Employer was required each morning to open the hood of his assigned truck to check the oil and water of the vehicle's engine. The hood, which weighed approximately eighty pounds, had to be pushed upward manually by the employee. One of the trucks had mud flaps attached to the hood and, when the hood was raised, the mud flaps would sometimes suddenly catch, instantly stopping the hood's upward motion. On July 14, 1994, Worker attempted to open the hood of his assigned truck so he could perform the mandatory check. As he pushed the hood upward, the mud flaps caught, and the hood locked. Worker felt a sharp pain in his neck, not unlike a cramp, and attempted to massage it out. Within a half-hour of the initial discomfort, the pain subsided. Worker told his boss later that morning that one day the hood was going to kill him. However, because his neck no longer hurt, Worker did not formally notify Employer of the incident. That night he told his wife and sister that the hood had caught but did not mention any present neck pain or neck injury.

3. The next day Worker noticed some numbness and heaviness in his arm. He attributed this sensation to the position of his arm when driving the truck. Over the next several days the pain in his arm gradually intensified and spread into his shoulder and hand. Worker began to take between five and eight aspirin every few hours to help alleviate the pain. He testified that he never associated the pain in his shoulder, arm, and hand with the hood incident because, other than the brief amount of time that his neck hurt immediately after the hood stuck, he had not felt any pain in his neck.

4. At the urging of his wife, Worker decided to seek medical attention. On August 11, 1994, he saw Dr. DuBose. Worker testified that he complained solely of shoulder and arm pain during the examination, although Dr. DuBose's notes indicate that Worker experienced pain in his right shoulder, radiating to his back and neck. Some tests were performed, and Worker was instructed to return a week later for the results. When Worker returned on August 17, 1994, the doctor indicated that Worker might have a pinched nerve in his neck. Worker, wondering for the first time if perhaps the hood incident could have been the cause of his shoulder and arm pain, voiced his thoughts to the doctor. Dr. DuBose responded that he would defer to an expert on that question and referred Worker to Dr. Heilbronn, a specialist. On August 24, 1994, Dr. Heilbronn diagnosed Worker as suffering from a herniated disk and scheduled him for corrective surgery on August 25, 1994. The surgery was performed as scheduled. On August 29, 1994, Worker provided written notice to Employer of his injury.

5. After a trial on the merits, the judge determined that Worker had suffered his accident on July 14, 1994, but that he did not know or should not have known he had a compensable claim until his second visit with Dr. DuBose on August 17, 1994. The judge held that, because Worker had provided Employer with written notice on August 29, 1994, within fifteen days of August 17, 1994,

Employer had timely notice of the July 14, 1994 accident.

## II. DISCUSSION

■ 6. Employer's docketing statement raised certain issues that were not briefed. These issues are thus deemed abandoned. *State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985).

7. In arguing that Worker did not file timely notice of his injury, Employer essentially makes two arguments in one. First, Employer argues that the amended version of Section 52–1–29(A) allows a worker's claim only if the accident is reported within fifteen days of its occurrence. Employer contends that the hood incident was the accident, as expressed by the statute, and because Worker did not provide notice within fifteen days of that incident, the notice was untimely. Second, Employer contends that, even if we construe Section 52–1–29(A) as allowing a tolling for latent injuries, because Worker experienced pain on the day of the hood incident, the resulting injury to his neck was not latent and should have been reported within fifteen days of the date of the incident. Because timely notice is the common thread running through both issues and because the issue of statutory interpretation is strictly a matter of law, we disagree with Worker's contention that the second issue is raised for the first time on appeal and should not be considered.

### A. Latent Injuries And Notice Under Section 52–1–29(A)

■ 8. When reviewing statutes, our main goal is to determine the intent of the legislature. *Romero Excavation & Trucking v. Bradley Constr.,* 121 N.M. 471, 473, 913 P.2d 659, 661 (1996). We determine intent by looking both at the plain meaning of the language employed and the object of the legislation. *Dona Ana Sav. & Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 592, 855 P.2d 1054, 1056 (1993). Our construction, however, "must not render a statute's application absurd, unreasonable, or unjust." *Id.* at 593, 855 P.2d at 1057.

■ 9. Providing notice to the employer is a condition precedent to the right of the worker to receive compensation for a work-related injury. *Sanchez v. Azotea Contractors,* 84 N.M. 764, 766, 508 P.2d 34, 36 (Ct. App.1973). Before 1991, Section 52–1–29(A) stated:

> Any worker claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident *and of the injury within thirty days after their occurrence* unless by reason of his injury or some other cause beyond his control the worker is prevented from giving notice within that time, in which case he shall give notice as soon as may reasonably be done and at all events not later than sixty days after the occurrence of the accident.

(Emphasis added.)

10. The amended version of Section 52–1–29(A), effective January 1, 1991, provides in part:

> Any worker claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident *within fifteen days after the worker knew, or should have known, of its occurrence,* unless, by reason of his injury or some other cause beyond his control, the worker is prevented from giving notice within that time, in which case he shall give notice as soon as may reasonably be done and at all events not later than sixty days after the occurrence of the accident.

(Emphasis added.)

■ 11. The interpretation of the amended provision is what is at issue in this appeal. *Strickland v. Coca–Cola Bottling Co.,* 107 N.M. 500, 502, 760 P.2d 793, 795 (Ct.App.) (legislative scheme in effect at time cause of action arose controls worker's right to compensation), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988). Employer contends that, because the legislature deleted the word injury, the amended provision required notice to be given within fifteen days of the accidental occurrence, regardless of whether the injury was evident at the time of the occurrence. We disagree. Admittedly, a first or cursory reading of the statute, without more, would appear to lend support to Employer's inter-

pretation. But an in-depth review of the case law and the additional language added to the provision by the legislature contemporaneously with the deletion, as we note later in this opinion, compels a different result.

12. Implicit in the language of the prior version, which combined the terms accident and injury (i.e., "accident and the injury" and "their occurrence" as opposed to "accident and the injury" and "their occurrences") is that the accident and the injury would occur simultaneously and that the statutory clock would start ticking upon that simultaneous event or "their occurrence." Our Courts, however, did not so construe the provision when a worker suffered a latent injury. Our case law illustrates that, for a latent injury, the statutory clock did not start ticking until the worker knew, or should have known by the exercise of reasonable diligence, that he or she had sustained a compensable injury. *See, e.g., Gomez v. B.E. Harvey Gin Corp.,* 110 N.M. 100, 102, 792 P.2d 1143, 1145 (1990); *Martinez v. Darby Constr. Co.,* 109 N.M. 146, 149, 782 P.2d 904, 907 (1989). Essentially then, our courts did not interpret the terms accident and injury as necessarily occurring simultaneously as the statute implied, but instead apparently construed the terms to mean "accidental injury." The injury, not the accidental occurrence, was determinative.

■ 13. The rationale of this case law is consistent with the proposition that at the heart of workers' compensation law is compensation for an accidental or compensable injury. *Anaya v. New Mexico Steel Erectors, Inc.,* 94 N.M. 370, 372, 610 P.2d 1199, 1201 (1980); 2B Arthur Larson, *The Law of Workmen's Compensation,* § 78.42(d) (1995). If there is no injury, there is no right of compensation. In the event of a latent injury, from which the worker has as much right to recover as he does from a patent injury, the worker may not know he has a compensable injury until some time after the incident causing the eventual injury. We agree that, in the field of workers' compensation, the occurrence of an event or incident in the work place, in and of itself, has no significance without an injury to accompany it.

14. Employer's interpretation of the word accident as an occurrence with or without an injury would mean that workers would be required to give notice of incidents or occurrences that could *potentially* cause an injury, or else be forever barred from receiving compensation if the injury manifested itself after the statutory time limit had run. This interpretation, however, raises a troubling prospect: How can a worker possibly know if an injury will eventually result from an incident or occurrence? Employer maintains that the purpose of the notice provision is to mitigate the seriousness of work-related injuries by allowing an employer to immediately investigate the facts and circumstances surrounding the accident and by ensuring that the worker receives proper medical attention. *See Herman v. Miners' Hosp.,* 111 N.M. 550, 555, 807 P.2d 734, 739 (1991). We agree. But without an injury, how does a worker even know if an accident has taken place? An equitable balance between these two opposing interests must be reached in interpreting the notice requirement.

15. The practical effect of Employer's interpretation would be that employers would be bombarded with notices of every minuscule incident that employees, fearful of being barred from pursuing compensation for later developing injuries, could imagine. We refuse to interpret a statutory provision to create such absurd consequences. *See Board of County Commr's v. Padilla,* 111 N.M. 278, 287, 804 P.2d 1097, 1106 (Ct.App. 1990); *see also Cemer v. Huskoma Corp.,* 221 Neb. 175, 375 N.W.2d 620, 622 (1985) (Nebraska statute allowing filing of claims only if within two years of accident construed to mean within two years of when worker discovered or should have discovered compensable disability); 2B Larson, *supra,* § 78.42(d) at 15–302 ("[W]hen the operative factor for acquiring substantive rights is 'injury,' and the operative date for the procedural purposes of starting the claim period running is 'accident,' and when the two do not necessarily coincide, ... bad results are produced."). *But see Coslow v. General Elec. Co.,* 877 S.W.2d 611, 614–15 (Ky.1994) (rejecting discovery rule and restricting interpretation to accidental occurrence with or without injury). We thus interpret the amendments to con-

form with existing case law, which provides that the notice clock commences when a worker knew or should have known of a compensable injury. *See, e.g., Gomez,* 110 N.M. at 102, 792 P.2d at 1145; *Martinez,* 109 N.M. at 149, 782 P.2d at 907; *Brown v. Safeway Stores,* 82 N.M. 424, 426, 483 P.2d 305, 307 (Ct.App.1970).

16. We might be more receptive to Employer's argument (that deletion of the term injury demonstrated the legislature's clear attempt to begin the notice clock as soon as the occurrence giving rise to the injury took place) if that were the only change the legislature had made to Section 52–1–29(A). *Cf. Kern ex rel. Kern v. St. Joseph Hosp.,* 102 N.M. 452, 455, 697 P.2d 135, 138 (1985) (interpreting unambiguous medical malpractice statute as running from date of wrongful act irrespective of injury). However, in addition to deleting the word injury and changing the time period from thirty days to fifteen days, the legislature also added language providing that a worker must give notice to the employer after he or she "knew or should have known of [the accident's] occurrence." This language is strikingly similar to the previously discussed case law interpreting the former provision. In context, then, we explain the legislature's deletion of the word injury as an attempt to conform to prior precedent and as an acknowledgment that, contrary to the facial meaning of the previous language, accident and injury do not necessarily occur simultaneously. *See City of Raton v. Sproule,* 78 N.M. 138, 150, 429 P.2d 336, 348 (1967) (statutory revision does not necessarily displace or repeal former language; revision can merely restate existing statute in improved or corrected form). Thus, as retained under the amended provision, the time to give notice for a latent injury begins when a worker knows, or, with reasonable diligence, should have known of the compensable injury.

17. Indeed, our Court has so interpreted the amended provision in *Flint v. Town of Bernalillo,* 118 N.M. 65, 878 P.2d 1014 (Ct. App.), *cert. denied,* 118 N.M. 178, 879 P.2d 1197 (1994). *Flint* construed the amended statute, in the case of a worker suffering from post-traumatic stress disorder, to start the clock for giving notice from the time the worker knew or should have known by exercise of reasonable diligence that he had incurred a compensable injury. *Id.* at 68, 878 P.2d at 1017. *Flint* quoted Professor Larson's observation that a worker " 'should be expected to display no greater diagnostic skill than any other uninformed layperson confronted with the early symptoms of a progressive condition.' " *Id.* (quoting 2B Arthur Larson, *The Law of Workmen's Compensation,* § 78.41(d) (1994)). We do not believe that post-traumatic stress disorder should be placed on a pedestal as the only type of latent injury requiring tolling. We thus expand the *Flint* holding to apply to all latent injuries.

18. Consistent with the precedent in *Flint,* we choose to remain true to the policies of the Workers' Compensation Act itself and to avoid an interpretation that would render absurd results. We therefore construe the amended provision of Section 52–1–29(A) to allow notice of all latent injuries within the statutory time period of when the worker knew or should have known, by the exercise of reasonable diligence, that he had a compensable injury.

### B. Whether Worker's Injury Was A Latent Injury

19. We now apply our interpretation of the statute to the facts in this appeal to determine if Worker provided timely notice. We review the entire record to determine if the trial court's decision is supported by substantial evidence. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). Worker and his wife both testified that there was no neck pain from the time of the hood incident to the time of the surgery, other than a cramping type pain that subsided approximately a half-hour after the initial discomfort. Testimony from both Worker and his wife also indicated that, although he experienced discomfort from the time of the incident, because it was so gradual and because the discomfort was not in his neck, he never made the connection with the hood incident until his second visit with Dr. DuBose on August 17, 1994. Dr.

Fogel testified that a "history ... of having felt some pain first in the neck, associated with stiffness, and then having a gradual or nonprecipitous increase in pain in the arm, is really pretty classical for a disc herniation of the neck."

20. Employer notes that, when Worker first sought medical attention after the incident, Dr. DuBose had written in his notes that Worker had been experiencing pain in his shoulder radiating to his neck. Employer also contends there was testimony that the shoulder and arm pain immediately after the incident was greater than described by Worker at trial. This was evidenced by the fact that a week after the incident Worker was taking between five and eight aspirin every few hours. Thus, Employer contends, Worker knew he was injured at the time of the incident. The issue on appeal, however, is not whether there is evidence to support an alternative result but whether the result below is supported by substantial evidence. *Bagwell v. Shady Grove Truck Stop,* 104 N.M. 14, 17, 715 P.2d 462, 465 (Ct.App.1986). It is the duty of the fact-finder to weigh the evidence and resolve any conflicts. *Griego v. Bag 'N Save Food Emporium,* 109 N.M. 287, 292, 784 P.2d 1030, 1035 (Ct.App.1989), *certs. denied,* 109 N.M. 262, 284 P.2d 1005 (1990). We determine that there was substantial evidence, specifically the consistent testimony of Worker and his wife that Worker felt no discomfort in his neck after the initial pain, for the judge to conclude that Worker's injury was a latent injury that could not have been discovered before August 17, 1994.

21. In his answer brief, Worker claims that Employer had actual knowledge of the accident on the day of the hood incident, which met the notice requirements. Because of our disposition, however, we need not address this issue.

## III. CONCLUSION

22. We conclude that Section 52–1–29(A) allows a worker to give notice of an accident within fifteen days after the worker knew or should have known by the exercise of reasonable diligence that he had a compensable injury. Because the judge, as the trier of fact, determined that Worker suffered a la-

tent injury not discoverable until August 17, 1994, the notice given by Worker was timely. The judge therefore did not abuse his discretion, and we affirm.

23. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.