This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ELEUTERIA SANCHEZ,**

Worker-Appellant,

v.                                                                                    **NO. 31,570**

**NEW MEXICO MEDICAL SURGICAL HOSPITAL**, d/b/a **ROSWELL REGIONAL**, and **ZENITH INSURANCE COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Chavez Law Firm
Gonzalo Chavez
Roswell, NM

for Appellant

French & Associates, P.C.
Katherine E. Tourek
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Worker Eleuteria Sanchez appeals from a compensation order in which the Workers' Compensation Judge (WCJ) denied her claim for benefits on the grounds that she failed to provide timely notice to her employer, New Mexico Medical Surgical Hospital, d/b/a Roswell Regional (Employer). *See generally* NMSA 1978, § 52-1-29(A) (1990). Worker cites the latent injury doctrine to argue that her delay in notifying Employer was permissible because she was uncertain about the extent of her injury and whether it was casually related to her job. For the reasons discussed below, we affirm the determination of the WCJ.

**BACKGROUND**

Worker was employed as a housekeeper by Employer. Worker's employment duties required her to have the ability to lift up to fifty pounds and included cleaning rooms; wiping and cleaning shelves, walls and equipment; hauling trash; vacuuming; sweeping; and mopping. On Saturday, July 3, 2010, Worker felt a pull in her back and pain radiating down her left leg while she was performing her mopping duties. She reported her symptoms to a co-worker at or near the time of her injury. Worker's pain was not severe enough to prevent her from finishing her shift or completing her regular duties. Worker also worked a full day on July 4, 2010. During this shift, she suffered from pain and discomfort.

Worker first sought medical attention for her symptoms on July 6, 2010. She was seen by David Aguilar, a Certified Nurse Practitioner at the clinic associated with

Employer. Worker reported to Nurse Aguilar that she had first started feeling pain three days earlier and that she noticed pain in her back and in her leg after completing long shifts at work. Nurse Aguilar diagnosed Worker with acute back pain and placed her on restrictions. The restrictions included no heavy lifting; no extended standing, sitting, walking, or driving; and no bending, pushing, or pulling. Worker's next scheduled shift was on July 8, 2010.

Shortly after her clinical visit, Worker provided the work restriction slip to her supervisor and met with Employer's human resources director. Worker reported that she was not injured at work to both her supervisor and to Employer's human resources director. Nonetheless, Worker's restrictions prevented her from completing her regular duties. Worker was removed from the schedule, effective July 6, 2010.

Worker saw Nurse Aguilar again on July 10 and 15, 2010, for follow-up appointments. Due to Worker's continued complaints of pain, Nurse Aguilar recommended an MRI of her lower back which was performed on July 23, 2010. The MRI evidenced a herniated disc at the L4-5 level. On July 27, 2010, Nurse Aguilar communicated the results of the MRI to Worker and gave her a no-work restriction. Worker notified Employer that her injury was work-related shortly after she received the results of her MRI. As a result, Worker completed a Notice of Accident form and Employer completed an Employer's First Report of Injury form.

The WCJ noted that: 1) fifteen days from the accident was July 18, 2010; 2)

fifteen days following the first day of medical care and the first day Worker was taken off work was July 21, 2010; and 3) fifteen days from when Worker first missed work due to the injury was July 23, 2010. Thus, it determined that the July 27, 2010, notice to Employer was not a timely notice of the accident as required by Section 52-1-29(A). The WCJ concluded that Worker did not have a valid excuse for her failure to timely notify Employer and, therefore, her claim for workers' compensation benefits was barred. Worker timely appealed the determination of the WCJ.

**STANDARD OF REVIEW**

This Court reviews workers' compensation orders using a whole record standard of review. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126, 767 P.2d 363, 365 (Ct. App. 1988). Pursuant to that standard, we review "all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Id.* at 128, 767 P.2d at 367. We review the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320. However, "[w]here the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Id.* (internal quotation marks and citation omitted); *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 17, 715 P.2d 462, 465 (Ct. App. 1986).

**DISCUSSION**

On appeal, Worker argues that she was not aware of the seriousness of her injury or its possible compensable character until after receiving the results of her MRI on July 27, 2010.  Because of the nature of her injury, Worker alleges that she could not be expected to provide notice until after the MRI was taken.  Thus, she asserts that her notice to Employer was timely under the latent injury doctrine.

Generally speaking, when a worker knows or has reason to know that he or she suffered a work-related injury, the worker is required to provide notice of injury to his or her employer within fifteen days.  *See* § 52-1-29(A); *Garnsey v. Concrete Inc. of Hobbs*, 1996-NMCA-081, ¶ 12, 122 N.M. 195, 922 P.2d 577 (observing that a worker is required to provide notice once the worker "knew, or should have known by the exercise of reasonable diligence, that he or she had sustained a compensable injury").  However, when a worker fails to recognize that an injury is work-related, and the failure is reasonable, the latent injury doctrine tolls the notice requirement until after the worker becomes aware of the probable casual relationship between the injury and employment.  *See Gomez v. B.E. Harvey Gin Corp.*, 110 N.M. 100, 102, 792 P.2d 1143, 1145 (1990) (requiring a worker to provide notice once he or she recognizes or should recognize the nature, seriousness, and probable compensable character of his or her injury); *Garnsey*, 1996-NMCA-081, ¶¶ 15, 19-20 (refusing to require a worker to provide notice before the worker developed reason to believe his condition was

5

related to work); *Flint v. Town of Bernalillo*, 118 N.M. 65, 68, 878 P.2d 1014, 1017 (Ct. App. 1994) (reasoning that the notice period should not begin to run until the worker "has reason to understand not only the nature and gravity of the injury but its relation to employment" (internal quotation marks and citation omitted)).

The latent injury doctrine typically applies when a worker has been involved in an accident and suffered harm, but is able to continue working for a period of time thereafter, such that the worker is unaware that the injury he or she has suffered is disabling and compensable in nature. *See Gomez* at N.M. 101-102, 792 P.2d at 1144-45 (noting that the worker was released to return to work without restriction after the injury causing accident and that the worker continued to work for nearly a month and a half); *Martinez v. Darby Const. Co.*, 109 N.M. 146, 147, 782 P.2d 904, 905 (1989) (explaining that the worker continued to perform his job for almost six months after the accident that ultimately led to his disability).

In this case, although Worker's injury was unknown in the sense that she was unaware of its exact diagnosis until after her MRI, it was also immediately identifiable and disabling. Worker immediately felt pain and was taken off of the work schedule within three days of her injury. Thus, insofar as Worker was unable to continue working, her injury is distinguishable from the type of latent injury that normally triggers an application of the latent injury doctrine. *See, e.g.*, *Gomez* at N.M. 102, 792 P.2d at 1145 (tolling notice pursuant to the latent injury doctrine because the

6

compensable nature of an injury "may become apparent to a worker only after loss of the capability to perform regular duties"). Worker claims the latent injury doctrine remains applicable, despite her immediate pain and the inability to perform her regular tasks, because she neither knew nor should have known that her problem was work related or compensable until after she was diagnosed with the herniated disc. We disagree.

"[T]he time to give notice for a latent injury begins when a worker knows, or, with reasonable diligence, should have known of the compensable injury." *Garnsey*, 1996-NMCA-081, ¶ 16. The WCJ determined that Worker should have provided notice, at the very latest, fifteen days after her injury caused her to miss her scheduled shift on July 8, 2010. Substantial evidence in the record supports the WCJ's determination that Worker should have been aware of the compensable nature of her injury by this time. On the date of the injury, Worker first indicated that her back and leg were hurting when she reported her symptoms to a co-worker. She again indicated awareness of the causal relationship between her injury and her job when she told Aguilar how the accident happened, that she had first started feeling pain three days prior to her examination on July 6, 2010, and that she noticed increased back and leg pain after working long hours. Moreover, as we have previously mentioned, Aguilar's restrictions made it nearly impossible for Worker to perform her regular duties as a housekeeper. As a result, she was taken off of the work schedule immediately

7

following her first medical appointment on July 6, 2010. Two days later, she missed her first previously scheduled shift. At this time, substantial evidence supports a finding that Worker's inability to perform her job required tasks should have put her on notice that the July 3, 2010, injury was compensable. *See Gomez* 110 N.M. at 102, 792 P.2d at 1145.

Worker essentially disregards the foregoing evidence on appeal, focusing instead on Nurse Aguilar's failure to specifically diagnose her injury until July 27, 2010. However, our cases indicate that a statutory deadline will be tolled only when a worker is unaware of the disabling nature of an injury, not while a worker awaits a definitive pronouncement from his or her medical care provider. *Cf. Gerke v. Romero*, 2010-NMCA-060, ¶ 12, 148 N.M. 367, 237 P.3d 111 (rejecting the argument that under the discovery rule, the accrual date is based upon the claimant's receipt of a proper medical diagnosis); *Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 24, 125 N.M. 615, 964 P.2d 176 (holding that the discovery rule does not uniformly toll the statutory limitation period until a definitive medical opinion regarding the cause of an injury has been provided to the claimant); *Montoya v. Kirk-Mayer, Inc.*, 120 N.M. 550, 554, 903 P.2d 861, 865 (Ct. App. 1995) (holding that due to the factual nature of inquiry, the statute of limitations is not automatically tolled until a worker is actually told by a health care provider that he or she has suffered a permanent impairment). We acknowledge that the context and the specific facts of this case are

different, but the general principle continues to be applicable to Worker's injury.

Worker contends that the foregoing analysis is inconsistent with more general principles of law, which provide that a worker is "not charged with medical knowledge which apparently transcends that possessed by the attending physician." *Sedillo v. Levi-Strauss Corp.*, 98 N.M. 52, 54, 644 P.2d 1041, 1043 (Ct. App. 1982) (internal quotation marks and citation omitted). However, in this case Worker has not been charged with such superior medical knowledge because the notice requirement is premised upon the worker's recognition of a *probable* relationship between her injury and her employment. *Gomez*, 110 N.M. at 102, 792 P.2d at 1145. Unlike post-traumatic stress disorder (PTSD), a painful work-related back injury that prevents a worker from returning to work is the type of "*obvious or common place injury apparent to the ordinary claimant*" and does not require a special diagnosis before reporting the injury to an employer. *See Flint*, 118 N.M. at 68, 878 P.2d at 1017 (internal quotation marks and citation omitted). Worker's conduct and statements to Nurse Aguilar and her co-worker indicate that she should have recognized the *probable* relationship between her employment and the injury. The severity of Worker's injury and that it was compensable and disabling became clear when she was restricted from returning to work on July 8, 2010, and could not return to work thereafter. There was substantial evidence to support the WCJ's conclusion that Worker's back injury could and should have been discovered and reported to

Employer by July 23, 2010. As a result, the WCJ correctly determined that the latent injury doctrine did not apply to the notice given by Worker to her Employer.

**CONCLUSION**

For the foregoing reasons, we affirm the disposition of the WCJ.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**J. MILES HANISEE, Judge**

10