This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERTO BONILLA**,

Worker-Appellant,

v.                                                            **No. 34,400**

**SANDIA RESORT & CASINO AND FOOD INDUSTRY SELF INSURANCE FUND OF NEW MEXICO,**

Employer/Insurer-Appellees.

**APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION**
**David L. Skinner, Workers' Compensation Judge**

Michael J. Doyle
Los Lunas, NM

for Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**KENNEDY, Judge.**

{1}   In this case, Worker Roberto Bonilla reported his injury to Sandia Resort & Casino (Employer) more than a month after it occurred, but only after it had worsened to a point where he could no longer work. His post-accident medical treatment did not recommend any diminution of work activities. We reverse the Workers' Compensation Judge's (WCJ) determination that Worker did not provide timely notice of his injury under the latent injury doctrine, allowing reporting at the time a worker knows, or has reason to know, his injury is disabling.

## I.   BACKGROUND

{2}   Worker began working as a security officer for Employer in 2012. While working on November 5, 2012, Worker was escorting another employee on the casino floor when his leg got caught on a chair. Worker tripped and fell onto the chair. He did not feel any pain at the time, so he got up and continued working. When he returned home after his shift, Worker noticed that he had a puncture wound, approximately three quarters of an inch long on his shin, as well as a scrape extending the length of his knee to his ankle, which began to bruise.[1] Worker knew that the puncture, scrape, and bruise were the result of his accident earlier that day. Worker continued performing his duties at work after the accident without limitation.

---

[1]All references to Worker's shin and leg pertain to Worker's right leg.

{3} Approximately two weeks later, on November 17, 2012, Worker sought medical attention because the injuries on his shin had worsened. Worker was worried because he felt his shin looked bad, and being diabetic, he knew there were added risks in sustaining such an injury. At the medical clinic, the injury was cleaned and dressed. Worker was diagnosed with cellulitis in his right leg, and he was prescribed antibiotics. No one at the clinic advised Worker to limit his work in any way. Worker continued working without restriction and without reporting the accident to Employer until December 10, 2012.

{4} On December 10, 2012, Worker could no longer continue working due to increased pain in his leg, and he reported the accident and resulting injury to Employer. While explaining the accident and resulting injury to his supervisors, Worker expressed uncertainty regarding the date on which the accident occurred, ultimately claiming that the accident had occurred on November 29, 2012. On the reports and forms he filled out, Worker claimed that the accident happened on November 29, 2012.[2]

{5} Worker subsequently filed a workers' compensation complaint. The WCJ bifurcated the case, and held a trial solely on two dispositive issues: (1) whether

[2]Worker testified at trial that the discrepancies in the date of the accident arose from his feeling confused and being in pain when he reported the injury to Employer on December 10, 2012.

Worker had an accident while working for Employer, and (2) if so, whether Worker gave proper and adequate notice of the accident as required by NMSA 1978, Section 52-1-29 (1990). The WCJ made findings of fact and conclusions of law in which he found that Worker suffered an accident at work on November 5, 2012, and was aware on that date that he had an abrasion as a result of that accident. The WCJ found that Worker sought medical care for an injury sustained as a result of that accident on November 17, 2012, and that Worker reported the accident to Employer on December 10, 2012. The WCJ also found that Worker did not suffer an accident at work on November 29, 2012. The WCJ used these findings to conclude that on November 17, 2012, when he sought medical treatment, Worker "knew or reasonably should have known that he suffered an injury as the natural and direct result of the November 5, 2012 accident." Accordingly, the WCJ concluded Worker did not provide Employer with timely notice of the accident as required by Section 52-1-29 when he reported the injury to Employer on December 10, 2012. As such, the WCJ barred Worker from recovering benefits under the New Mexico Workers' Compensation Act.

## II.    DISCUSSION

### A.    Standard of Review

{6}    When reviewing findings of fact made in workers' compensation cases, we conduct a whole record review. *Tallman v. ABF (Arkansas Best Freight)*, 1988-

4

NMCA-091, ¶ 4, 108 N.M. 124, 767 P.2d 363. A whole record review precludes the reviewing court from reweighing the evidence or reassessing the credibility of witness testimony. *Id.* ¶¶ 7-8 Instead, a whole record review is a test of reasonableness, permitting the reviewing court to look at all the evidence in order to determine if there is substantial evidence to support the result, or evidence that a reasonable mind would accept as adequate to support the conclusion reached. *Id.* ¶¶ 9-10. "The reviewing court starts out with the perception that all evidence, favorable and unfavorable, will be viewed in the light most favorable to the agency's decision." *Id.* ¶ 18. However, we "may not view favorable evidence with total disregard to contravening evidence." *Id.* ¶ 13 (internal quotation marks and citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not mean the agency's findings are unsupported by substantial evidence." *Id.* ¶ 15. We review a WCJ's application of law to the facts de novo. *Ruiz v. Los Lunas Pub. Schs.*, 2013-NMCA-085, ¶ 5, 308 P.3d 983.

**B.      Latent Injuries and Notice Under Section 52-1-29(A)**

{7}      Section 52-1-29(A) provides: "Any worker claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident within fifteen days after the worker knew, or should have known, of its occurrence[.]" However, not all workplace accidents, without accompanying injury,

5

need to be reported, particularly where such a rule would result in employers being bombarded with notices of even minuscule incidents: "workers would be required to give notice of incidents or occurrences that could *potentially* cause an injury, or else be forever barred from receiving compensation if the injury manifested itself after the statutory time limit had run." *Garnsey v. Concrete Inc. of Hobbs*, 1996-NMCA-081, ¶¶ 14-15, 122 N.M. 195, 922 P.2d 577.

{8}     Courts acknowledge that not all accidents are accompanied by an immediately recognizable injury: "In the event of a latent injury, . . . the worker may not know he has a compensable injury until some time after the incident causing the eventual injury." *Id.* ¶ 13. "A compensable injury requires some legal disability or inability to perform work." *Martinez v. Darby Constr. Co.*, 1989-NMSC-069, ¶ 12, 109 N.M. 146, 782 P.2d 904. A compensable injury is one that more likely than not renders the worker "impaired and unable, at least to some percentage extent, to perform the job for which the worker is suited." *Gomez v. B.E. Harvey Gin Corp.*, 1990-NMSC-057, ¶ 6, 110 N.M. 100, 792 P.2d 1143. In order to be compensable, the disability arising from an injury "must be a natural and direct result of the accident." *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 25, 137 N.M. 497, 113 P.3d 320; *see also* NMSA 1978, § 52-1-28(A)(3) (1987) (same). In cases where a worker has been involved in an accident, has suffered harm, and continues working due to unawareness

6

that the injury is disabling and compensable in nature, courts apply the latent injury doctrine. *See, e.g.*, *Garnsey*, 1996-NMCA-081, ¶ 13. Under this doctrine, "the time to give notice for a latent injury begins when a worker knows, or, with reasonable diligence, should have known of the compensable injury." *Id.* ¶¶ 16, 18. "[T]he time for notice does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease." *Martinez*, 1989-NMSC-069, ¶ 12 (alteration, internal quotation marks, and citation omitted); *see also Gomez v. Hausman Corp.*, 1971-NMCA-173, ¶ 12, 83 N.M. 400, 492 P.2d 1263 (declining to hold that "non-disabling pain constitutes a compensable injury under the New Mexico Worker's Compensation Act").

**C.     Worker Sustained a Latent Injury**

{9}      Worker asserts that Section 52-1-29(A)'s fifteen-day notice period starts on the date on which the worker becomes disabled through an inability to work, rather than the date of his accident. In support of this assertion, Worker cites to *Tom Growney Equipment Co.*, *Gomez*, *Herndon*, and *Martinez.* Employer asserts that Worker's injury was not latent and alternatively suggests that if Worker's injury is latent, his ability or inability to work is not relevant to our analysis under the latent injury doctrine.

{10}      Neither party challenges the WCJ's finding that Worker's injury was the natural

7

and direct result of the November 5, 2012 accident. The WCJ apparently concluded that Worker knew he had suffered a compensable injury on November 17, 2012. In our view, under the WCJ's findings, Worker was involved in an accident but remained unaware of the compensable nature of his injuries for some time. We therefore conclude that Worker's injury was latent. Employer suggests that Worker's injury was not latent because he was aware he had sustained an injury the same day as the accident. As discussed below, however, the compensable nature of that injury did not become apparent until after the accident. *See, e.g.*, *Garnsey*, 1996-NMCA-081, ¶ 13 ("In the event of a latent injury, . . . the worker may not know he has a compensable injury until some time after the incident causing the eventual injury."); *see also Martinez*, 1989-NMSC-069, ¶ 12 (describing compensable injury as where the worker knows that, "more likely than not he is impaired and unable, at least to some percentage extent, to perform work for which he is suited"). Thus, the injury was latent; we must assess when it was apparently compensable.

**D.     Worker Gave Timely Notice on December 10, 2012**

{11}     Application of the law to the facts found by the WCJ leads to our conclusion that Worker gave timely notice under Section 52-1-29(A), contrary to the WCJ's conclusion below. *See, e.g.*, *Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 8, 145 N.M. 494, 200 P.3d 544 (declining to defer to the agency's

8

conclusions of law when applying a whole record review). As mentioned briefly earlier in this opinion, New Mexico case law is replete with cases in which an employee is involved in an accident, sustains and injury, and that injury eventually leads to a disability. *See Tom Growney Equip. Co.*, 2005-NMSC-015, ¶¶ 3-7; *Gomez*, 1990-NMSC-057, ¶¶ 3-4; *Martinez*, 1989-NMSC-069, ¶¶ 3-5; *Herndon*, 1978-NMCA-072, ¶¶ 6-7, 92 N.M. 636, 593 P.2d 470. In such instances, our appellate courts consistently apply the facts in such a way that, even if the worker was aware of the injury prior to the disability, the notice period of Section 52-1-29(A) does not begin until the disability prevents the employee from working. *See, e.g.*, *Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 31 ("[W]here aggravation of a prior injury results in disability, notice must be measured from the date of disability[.]"). Applying the latent injury doctrine, these cases begin the notice period on the date of disability because a worker may not be aware of any impairment to their ability to work until "pain prevent[s] him from returning to work on a regular basis," *Gomez*, 1990-NMSC-057, ¶ 8, or he is not longer "able to perform his duties[,]" *Martinez*, 1989-NMSC-069, ¶ 15. This is the case even where "some time has elapsed from the date of the original incident during which the worker was able to perform usual tasks while experiencing pain." *Gomez*, 1990-NMSC-057, ¶ 7.

{12}    *Martinez* illustrates the way our courts have used latent injury doctrine to allow

9

the notice period to run from the date of disability. 1989-NMSC-069. In *Martinez*, the claimant suffered an accident on June 10 in which he was hit on the head with a backhoe, but was not advised by his June 14 visit to discontinue work. *Id.* ¶¶ 3-4. The claimant continued working, without any absences, until December 3. *Id.* ¶ 5. On December 5, the claimant sought emergency treatment, was diagnosed consistent with his June 14 medical visit, and was advised to discontinue work. *Id.* The claimant did not return to work after that. *Id.*

{13}    Our Supreme Court reasoned that the claimant's continued work schedule indicated that is was "within the bounds of reason" that the claimant did not believe he had a compensable injury or disability until December. *Id.* ¶ 15. As such, the Court agreed with the agency's decision that "it was reasonable for the claimant to believe that so long as he was able to perform his regular welding duties, notice to the employer was unnecessary." *Id.* Our Supreme Court, believing that this evidence revealed that the claimant knew or should have known of the existence of a compensable injury no earlier than December 3, concluded that notice was timely given and affirmed the agency's award of benefits. *Id.* ¶¶ 10, 15, 16.

{14}    In another factually analogous case, *Gomez*, the worker sustained a back injury on December 14 while on the job, but continued working the rest of the day. 1990-NMSC-057, ¶ 3. The worker sought medical assistance, was diagnosed with a strained

back, given pain medication, and released without restriction. *Id.* The worker continued at his job until January 27, when the pain became too severe to continue. *Id.* ¶ 4. He was admitted to the hospital and diagnosed with a bulging disc and gave his employer notice of his workers' compensation claim on January 31. *Id.* The worker was barred from recovering benefits on the basis of his failure to provide notice following the December 14 injury. *Id.* ¶ 5. Our Supreme Court acknowledged that a worker may not have the requisite knowledge to trigger the notice period where there is a lapse of time between the original incident and the ultimate disability. *Id.* ¶ 7. Reasoning that the worker returned to work without having received any recommendation that he seek medical treatment, the Court concluded that the facts did not support a finding that the worker knew or should have known that he had a disabling, compensable injury before January 27. *Id.* ¶ 8. The Court even pointed out that, "[g]enerally, when back pain is suffered, one usually assumes—and hopes, it will get better." *Id.* The Court reversed, concluding that the worker gave timely notice and was entitled to benefits. *Id.* ¶ 8.

{15}     The facts of this case are analogous to those in *Gomez*. Worker in this case knew he suffered an injury as a result of his November 5 accident. The injury, however, was one that most people would reasonably hope and assume would heal. Worker's injury did not improve, and he sought medical attention. He was prescribed

11

antibiotics and sent on his way without being told of any restrictions, precautions, or additional treatment. Despite the fact that Worker was aware that his injury had worsened as of November 17, 2012, a reasonably diligent person, having had the injury cleaned and armed with a prescription for antibiotics, would likely assume the condition would improve. 11 Arthur Larson et al., *Larson's Workers' Compensation Law* § 126.05[5] at 126-26 (2015) ("[F]ailure to file a claim promptly may be excused if claimant had no reason to believe the condition serious."). It was not until December 10, 2012, when the pain prevented Worker from working, that Worker realized for the first time that he had suffered a compensable injury. It is within the bounds of reason that Worker was not aware of the severity or debilitating nature of his injury until December 10, 2012. Accordingly, we conclude that the notice given on that date was timely, and we reverse.

## III.  CONCLUSION

{16}   Deferring to the WCJ's findings of fact and applying those facts to the correct legal standard, we conclude that the compensable nature of Worker's injury was not apparent, even through the exercise of due diligence, until December 10, 2012, when he became unable to continue working due to the increased pain in his leg. As a result, Worker provided Employer with timely notice of his accident, the accompanying injury, and the resulting disability. As such, we reverse the WCJ's decision, and

remand for further proceedings consistent with this opinion as may be necessary to determining Worker's claim.

**{17}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Judge**

**STEPHEN G. FRENCH, Judge (dissenting).**

**FRENCH, Judge (dissenting).**

**{18}** The central issue in this case is whether Worker offered timely notice of his accidental workplace injury. That issue turns on when Worker's notice requirement was triggered. The WCJ found that when Worker visited a doctor on November 17, 2012, Worker had, or reasonably should have had, sufficient knowledge of the nature of his injury to trigger the notice requirement. I respectfully dissent because, unlike my colleagues, I believe that the evidence supports the finding of the WCJ when viewed through the prism of our standard of review.

**{19}** The requirement that a worker notify his or her employer of a potentially compensable injury within fifteen days can, of course, be triggered by actual

disability. *Martinez*, 1989-NMSC-069, ¶ 12; *see also* § 52-1-29(A) (stating that a worker has fifteen days to provide notice of a potentially compensable workplace injury to an employer). But that is not the only possible trigger: knowledge, or knowledge that the worker should have had with the exercise of reasonable diligence, "that more likely than not he is impaired and unable, at least to some percentage extent, to perform work for which he is suited" will also suffice. *Martinez*, 1989-NMSC-069, ¶ 12. In this case, Worker sought medical attention on November 17, 2012, because his injuries had worsened and, as a diabetic, he was aware of additional risks. Medical personnel did not recommend any work restrictions. However, medical personnel told Worker that he had cellulitis, cleaned and dressed his puncture wound, and prescribed antibiotic treatment. In my view, these circumstances in combination were such that Worker knew, or should reasonably have known, of the "nature, seriousness, and probable compensable character of the injury." *Gomez*, 1990-NMSC-057, ¶ 7.

**{20}** Although New Mexico cases have relied on the date a worker was unable to perform regular work duties, *see, e.g.*, *Martinez*, 1989-NMSC-069, ¶ 15, or a doctor's recommendation of work restrictions, *see, e.g.*, *Sanchez v. City of Albuquerque*, 1965-NMSC-043, ¶ 10, 75 N.M. 137, 401 P.2d 583, as triggers for the notice requirement, neither represents a threshold test for whether Worker knew, or should have

14

reasonably known, he had a compensable injury. Importantly, our standard of review requires that we view the totality of the evidence in the light most favorable to the decision of the agency and determine whether the evidence is such that, to a reasonable mind, it would support the agency's conclusion. *Tallman*, 1988-NMCA-091, ¶¶ 9-10, 18. In my view, there was ample evidence to support a reasonable conclusion that Worker knew, or should have known, on the basis of the information he had on November 17, 2012, that his injury was probably compensable. *See Gomez*, 1990-NMSC-057, ¶ 7 (stating that the notice required is triggered when a worker knew, or should have known, that the accidental workplace injury was probably compensable). Accordingly, Worker's December 10, 2012, notice to Employer—more than fifteen days after the notice requirement was triggered on November 17, 2012—was untimely. *See* § 52-1-29(A) (stating that generally, in order to be entitled to compensation, a worker has fifteen days to provide notice to an employer of a workplace accident). I would affirm.

_____
**STEPHEN G. FRENCH, Judge**